UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

   -v-                                      CASE NO.   5:18 CR00051-001

PATRICK ANGELO,
                Defendant.
_____

## SENTENCING MEMORANDUM

DATED: May 10, 2018                            Respectfully submitted,

                                                              LISA A. PEEBLES
                                                               Federal Public Defender

                                    By:   Randi J. Bianco, Esq.
                                               Assistant Federal Public Defender
                                               Bar Roll No. 507514
                                               Clinton Exchange, 3rd Floor
                                               4 Clinton Square
                                               Syracuse, New York   13202
                                               (315) 701-0080

**I.     PRELIMINARY STATEMENT**

On February 20, 2018, Mr. Patrick Angelo [hereinafter "Patrick] entered a guilty plea to a one count information charging him with Threat by Interstate Commerce in violation of Title 18 U.S.C. § 875(C). He is currently scheduled for sentencing on June 21, 2018. The United States Probation Department prepared a Presentence Investigation Report (*hereinafter* "PSR") on April 30, 2018, in anticipation of Patrick's sentencing. The PSR sets forth a total advisory Offense Level of 9 (after acceptance of responsibility) and a Criminal History Category of 1, resulting in an advisory guideline range of 4 to 10 months imprisonment. At the time of sentencing, Patrick will have served almost 7 months of incarceration.

The Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Fan-Fan*, 125 S.Ct. 738 (2005), held that the guidelines are only advisory. In determining a sentence, a Court must not only consider guideline calculations, but also equally take into account all other statutory concerns listed in 18 U.S.C. § 3553 (a)(2), as well as the Defendant's unique circumstances.

The Sentencing Reform Act provides, in part, that:

The Court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in Paragraph (2) of this subsection. The Court, in determining the particular sentence to be imposed, shall consider:

(1)     The nature and circumstances of the offense and the history and characteristics of the defendant;
(2)     The need for the sentence imposed -

1

      (A)    To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)    To afford adequate deterrence to criminal conduct;

      (C)    To protect the public from further crimes of the defendant; and

      (D)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a).

Patrick respectfully submits this Memorandum in support of a sentence of time served plus probation as such a sentence would be "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. § 3553(a)(2).

## II. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

### a) *Alcohol Played a Significant Role in the Offense.*

On Thursday, October 19, 2017, the night of the telephone call to Congressman Katko's office, Patrick had been drinking and was intoxicated. He was reading about net neutrality on the internet and became upset about the topic. In a spur-of –the-moment decision, which he has only a vague recollection of, Patrick decided to call Congressman Katko's office. Patrick called from a cellular phone where his father was the subscriber and Patrick was the assigned user [PSR ¶ 9]. According to the criminal complaint, the phone call was made at 7:50 pm and no one from Congressman Katko's office answered. The call went to voice mail where Patrick left a message about his thoughts on net neutrality, culminating in

2

threats of what he would do *if* the Congressman did not support net neutrality. The voicemail cut off before Patrick finished leaving the message. Patrick did not call back again to complete the threat or to make additional threats. Congressman Katko's staff did not retrieve the message until Monday, October 23, 2017.

On November 1, 2017, Patrick voluntarily met with the agents. Patrick at first denied making the call, but ultimately admitted making the call and the threats after he was drinking.  Patrick advised the agents he had no intention on carrying out any threats. He then apologized. [PSR ¶ 12].

On November 28, 2017, Patrick was asked to meet with the agents a second time and he did so voluntarily.  Once again, Patrick admitted making the phone call while he was drunk.  After Patrick spoke to the agents, he was arrested and taken into custody without incident. Significantly, this was approximately six weeks after the call to the Congressman's voicemail with no additional threats occurring.

    b)    *Patrick is Not a Danger to the Community.*

At the initial appearance, Probation requested that Patrick undergo a psychological evaluation based on the nature of the charges.  Probation suggested that the evaluation be conducted by Dr. Thomas A. Lazzaro, a forensic psychologist. Magistrate Judge Dancks asked if Patrick would agree to such an evaluation at the expense of the government. Patrick agreed.  Dr. Lazzaro

conducted a five-hour psychological evaluation on December 6, 2017, at the Cayuga County Jail, where Patrick was being housed.

The purpose of the evaluation was to assess Patrick's intellectual abilities, his neuropsychological status, his intrapsychic structure, his emotional stability and to ascertain his future dangerousness for the Court if he were released pending trial. In this regard, Dr. Lazzaro conducted a clinical interview and administered a number of psychological tests to Patrick. As a result of the psychological testing data, Patrick's history and Dr. Lazzaro's clinical impressions, he opined with a reasonable degree of psychological and professional certainty that Patrick would not be a danger to himself or others if returned to the community pending trial. Dr. Lazzaro opined that there were no indications of any underlying predisposition for acting-out behaviors. [Report filed under separate cover].

The government has made much about the fact that a long gun was found in Patrick's residence. Significantly, it was the defense who first disclosed the existence of this long gun at the initial appearance. Thereafter, Probation did a home visit and found the weapon exactly where Patrick said it would be located. There has also been a misunderstanding of when Patrick last fired the long gun. While Patrick's mother, Teresa Angelo, told Probation during the pre-trial services interview that Patrick had been taking shooting lessons [PSR ¶ 43], she was in fact mistaken. Teresa lived in Geneva and Patrick in Syracuse, so she had no first-hand knowledge of this information. At the detention hearing, Patrick, through counsel,

explained that the long gun had not been used in over one year. He did not take official lessons or belong to a shooting range. Rather, Patrick's friend tried to teach him how to use the gun. Patrick maintained that the long gun had absolutely no connection to this particular case [Detention hg at p. 17].

During the home inspection of Patrick's apartment before the detention hearing, the Probation Officer observed a number of books in the apartment. Some of these books dealt with assassinations of presidents [PSR ¶ 43]. The names of these books were never disclosed nor were they written in the pre-trial services report. At the detention hearing, Patrick explained, through counsel, that he had some of Bill O'Reilly's best-selling books, including the Killing of Lincoln and similar titles. He was also a history major in college and enjoyed reading. [Detention hg at p. 17]. These books, like the long gun, had no connection to the crime.

Patrick is not a danger to the community and would pose no danger if he were released from custody. He has no criminal record, comes from a stable home, is a college graduate and has never been to jail before. Patrick has learned much about the serious consequences of his drunken actions in the last seven months in jail.

### III. THE HISTORY AND CHARACTERISTICS OF PATRICK ANGELO

#### a) Family

Patrick comes from a close-knit family. He grew up in Geneva, New York, with his parents and his two siblings. He spends a lot of time with his family, especially his 93-year-old grandmother. The people who know Patrick best have written support letters on his behalf. These letters come from family members, close friends, neighbors, former teachers, clergy members, former employers and others. All who know Patrick speak of his kindness, work ethic and willingness to help those in need. All attest to his good character.

#### b) Education and Activities

Patrick attended grade school, middle school and high school in Geneva, New York. While living in Geneva, Patrick participated in a number of extracurricular activities. He had a paper route at a young age in an attempt to earn his own money. He sang in the Saint Peter's Episcopal Church choir for ten years. The church choir met two times per week, year round, and Patrick was a very dedicated member. He even performed with the church choir in Europe and performed a solo in a church in Edinburgh, Scotland. Patrick played little league when he was young. When he got older, he joined the Junior High and High School Band. Additionally, Patrick volunteered to work backstage on the high school's theatre productions. Many of the people involved in organizing these activities remember Patrick and have written letters in support of him.

After graduating, Patrick attended the State University of New York at Albany and graduated in 2011 with a Bachelor's Degree in History and Anthropology.

### c)     *Rigorous Work Ethic*

Patrick has always had a strong work ethic. Prior to his arrest, he was employed at Apnea Care Incorporated as a technician. He set up and delivered oxygen to people in their homes. Before working at Apnea Inc., he spent five years at the Cheesecake Factory. He began at the Cheesecake Factory in Albany while attending college.  Once he graduated, he was transferred to the new Cheesecake Factory in Syracuse where he received a pay raise. He has always been employed.

## IV.    REMORSE AND COLLATERAL CONSEQUENCES OF CONVICTION.

Patrick is very remorseful for his actions. He realizes the gravity of his mistakes and the fear he unintentionally imposed on the Congressman and his family during his drunken telephone message. For that, he is truly sorry, but it bears repeating that Patrick never intended to carry out the threat.  Patrick has already lost his employment and has remained in jail since his initial appearance. In addition to the jail time he has already served, and the supervised release term which, will undoubtably follow, there are other collateral consequences that Patrick will suffer.  Besides the usual loss of rights associated with a felony conviction, Patrick will have a difficult time pursuing a career in any professional

capacity, especially given the nature of the conviction, notwithstanding the fact that he has a Bachelor's Degree.

## V. CONCLUSION

Patrick is a good person who made terrible decisions after having too much to drink. Since his arrest has accepted responsibility for his actions and feels great remorse for what he has done. Based upon the foregoing, Patrick respectfully requests that this Court consider the circumstances surrounding this offense. We ask this Court to depart downward and find that a sentence of time served followed by supervised release is a sentence sufficient, but not greater than necessary, to comply with the punishment requirements of the Sentencing Reform Act.

DATED: May 10, 2018

LISA A. PEEBLES
FEDERAL PUBLIC DEFENDER

By:   *s/ Randi J. Bianco, Esq.*
Assistant Federal Public Defender
Bar Roll No. 507514
Clinton Exchange, 3rd Floor
4 Clinton Street
Syracuse, New York   13202
(315) 701-0080

TO:   Craig Gestring, AUSA
Sean C. Eldridge, AUSA
USPO Angela Bennett Rodriguez
Mr. Patrick Angelo

8