IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                                              18-CR-0051 (MAD)

PATRICK D. ANGELO,

    Defendant.

## STATEMENT OF THE GOVERNMENT WITH RESPECT TO SENTENCING FACTORS

**PLEASE TAKE NOTICE**, the United States hereby adopts all findings of the May 22, 2018 revised Presentence Investigation Report (PSR) with respect to sentencing factors in this action which calculates the advisory sentencing guideline range to be 4 to 10 months imprisonment.

Should the defendant present any letters of support or sentencing statement to the Court, the United States will move to strike the items from the record if this office is not provided with copies at least three business days prior to sentencing.

The defendant is required by Title 18, United States Code, Section 3013 to pay the sum of $100 at the time of sentencing. Immediately after sentencing, the defendant must pay the amount due by personal check, cashier's check or certified funds to the United States District Court Clerk.

The United States reserves the right to respond to any filings made by the defendant.

**I.     THE SECTION 3553(a) FACTORS SUPPORT A SENTENCE AT LEAST AT THE HIGH END OF THE GUIDELINE RANGE FOR IMPRISONMENT**

In reviewing the section 3553(a) factors, as enumerated in Title 18 of the United States Code, the government respectfully requests the Court particularly consider the need for the sentence to reflect the nature and circumstances of the offense, the seriousness of the offense, the need for deterrence, as well as to protect the public from further crimes. *See* Title 18, United States Code, Sections 3553(a)(1) and (a)(2). The United States respectfully asks this Court to impose a sentence that is at least at the high end of the advisory guideline range of 4 to 10 months imprisonment, to be followed by a 3 year period of supervised release.

**A.     AN INDIVIDUALIZED ASSESSMENT OF THIS DEFENDANT SUPPORTS THE IMPOSITION OF A SENTENCE AT LEAST AT THE HIGH END OF THE GUIDELINES RANGE FOR IMPRISONMENT**

It is well settled that calculating the advisory sentencing guidelines is the first step in determining the defendant's ultimate sentence, after which the Court must consider the Section 3553(a) factors. *United States v. Dorvee*, 616 F.3d 174, 180 (2d Cir. 2010) quoting *United States v. Gall*, 552 U.S. 38, 49-50 (2007); *see also United States v. Aumais*, 656 F.3d 147 (2d Cir. 2011). Under this approach, district courts must consider the advisory sentencing guidelines, but ultimately base the appropriate sentence on an "individualized assessment" of the Section 3553(a) factors. *Aumais*, 656 F.3d at 157.

In this case and considering the Section 3553(a) factors, *as individually applied to this defendant*, a sentence that is at least at the high end of the advisory guideline range is both appropriate and required.

## B. THE DEFENDANT THREATENED THE LIFE OF A MEMBER OF CONGRESS AND HIS FAMILY

In his carefully worded self-serving apology, reproduced at paragraph 19 of the Presentence Investigation Report, the defendant blames his conviction on alcohol. ANGELO claims that he "…would never have done such a thing" if he wouldn't have been drinking. While apparently recognizing that this is no legal defense to the crime[1], the defendant still tries to blame the bottle for his conduct, trying to get in the back door that which he cannot bring through the front. This excuse falls flat.

In the recorded threat call, ANGELO told Congressman Katko that if the Congressman did not agree with ANGELO'S position on net neutrality, then "*…I will find you and your family and I will kill…you…all.*" ANGELO then clarified his death threat, lest it be misinterpreted. "*Do you understand? I will literally find all…of…you and your progeny and t- just wipe you from the face of the earth.*" He concludes his threat by starting to say that he is willing to lay down his life. Those words, coupled with the tone in which they were delivered, leave no doubt about the intent of the defendant who made them. ANGELO made his threat knowingly, clearly, and deliberately. He did not slur his words. He did not mitigate his threat against the Congressman or his family. He chose his words and his tone of voice carefully to cause the maximum impact. And they did.

ANGELO not only threatened to kill the Congressman, but he also threatened to track down and murder the Congressman's family. He is not subtle in his threat, and his words are terrifying. "*Do you understand? I will literally find all…of…you and your progeny and t- just wipe

---

[1] "Voluntary" intoxication may rebut proof of intent in a "specific intent" but not a "general intent" crime. *United States v. Sewell*, 252 F.3d 647, 650-51 (2d Cir. 2001).

*you from the face of the earth."*  One of the most primitive biological imperatives is the protection of family. ANGELO'S threat did not simply involve a legislative quid pro quo – you vote for my issue or I will kill you – but he invoked the dark specter of murdering a whole family to get his way.

In judging ANGELO's words, the Court should again listen to the recording of the call he made to Congressman Katko's office.  The words ANGELO used in making the threat – *"I will find you and your family and I will kill…you…all"* and *"Do you understand? I will literally find all…of…you and your progeny and t- just wipe you from the face of the earth"* are undoubtedly threatening and serious.  But reading the words off a cold transcript does not put them in the proper context, nor does it allow the reader to appreciate how threatening and terrifying ANGELO's call truly was.  In listening to the recording, ANGELO's threat is clear, it is deliberate, it is carefully worded, and it is chilling.

Further, ANGELO's actions, his statements in the threat, and his manner of speech during the threat simply do not support his allegation that the threat was made as the result of voluntary intoxication.  As the Court recalls, ANGELO dialed the correct phone number not for any member of Congress, but for his representative – Congressman Katko.  ANGELO acknowledges this at the beginning of his threat, stating "Listen Mr. Katko."  ANGELO further uses the word "progeny" to describe the Congressman's family, and continues on with five sentences to describe his views on net neutrality, an issue then being considered by Congress and the Federal Communications Commission.  ANGELO's words and actions clearly demonstrate that he was fully aware of the threat he was making, and of the specific nature of his threat.

ANGELO's conduct – threatening the life of a Congressman and his family over the performance of the Congressman's official duties – cannot and will not be tolerated. This Court's sentence must send a message to the public that such conduct is not acceptable, and should further send the message that threats to public officials and their family members are serious offenses, and will be punished in such a way that reflects the seriousness of the conduct and that will also deter other individuals from engaging in similar conduct in the future.

### C. THE DEFENDANT NEEDS MENTAL HEALTH TREATMENT AND SUPERVISION FOLLOWING RELEASE

The Government strongly urges this Court to include the maximum period of supervised release following incarceration for this defendant. It is clear that he needs considerable supervision to ensure that he does not engage in any further criminal activity or make any other calls involving "strong language.[2]" Disturbingly, ANGELO told the FBI during a non-custodial interview that he was sure that the Congressman didn't appreciate the message. To be clear, nobody did.

The special conditions of supervised release recommended by the probation department – mental health treatment and substance abuse testing – are entirely appropriate given ANGELO's history, and his conduct in this case. Following ANGELO's prison term, a 3 year term of supervised release (which is also within the advisory guideline range of 1 to 3 years supervised release) is entirely appropriate, and should be imposed by the Court.

---

[2] The defendant used this phrase to characterize his language during an FBI interview.

## CONCLUSION

The Section 3553(a) factors, as enumerated in Title 18 of the United States Code, list among other things, the need for the sentence to reflect the nature and circumstances of the offense, the seriousness of the offense, the need for deterrence, and the need to protect the public from further crimes. All these factors support the imposition of a prison sentence that is at least at the high end of the guidelines, and further imposes a 3 year period of supervised release. Such a sentence is appropriate to accomplish both general and specific deterrence due to the nature of the crimes charged, and to send a message to ANGELO and to the community that this conduct will not be tolerated.

For these reasons, and in considering the Section 3553(a) factors as they apply *individually to this defendant,* the United States respectfully requests the Court to impose a sentence that is at least at the high end of the advisory guideline range, a fine, a $100 special penalty assessment, and a 3 year period of supervised release.

DATED:     Rochester, New York, May 24, 2018.

JEFFERSON B. SESSIONS
Attorney General of the United States

JAMES P. KENNEDY, JR.
United States Attorney
Western District of New York

By:     S/Craig R. Gestring
CRAIG R. GESTRING
Assistant United States Attorney
Bar Roll No. 520960

By:     S/Sean C. Eldridge
SEAN C. ELDRIDGE
Assistant United States Attorney
Bar Roll No. 520961