1           UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF NEW YORK

3

4   UNITED STATES OF AMERICA,              )
                                           )
5                                          )
                                           ) CASE NO. 18-CR-51
6                                          )
       vs.                                 )
7                                          )
    PATRICK D. ANGELO,                     )
8                                          )
                Defendant.                 )
9   _____   )

10              **TRANSCRIPT OF PROCEEDINGS**
             **BEFORE THE HON. MAE A. D'AGOSTINO**
11               **FRIDAY, JUNE 1, 2018**
                  **ALBANY, NEW YORK**
12

13  **FOR THE GOVERNMENT:**
      OFFICE OF THE UNITED STATES ATTORNEY
14    By:  CRAIG GESTRING, AUSA
            and SEAN C. ELDRIDGE, AUSA
15    100 State Street, Suite 500
      Rochester, New York 14614
16

17  **FOR THE DEFENDANT:**
      OFFICE OF THE FEDERAL PUBLIC DEFENDER
      By:  RANDI JUDA BIANCO, ESQ.
18    4 Clinton Square, 3rd Floor
      Syracuse, New York 13202
19

20

21

22

23

24

25

                    *JACQUELINE STROFFOLINO, RPR*
                *UNITED STATES DISTRICT COURT - NDNY*

**USA v. Angelo - 18-CR-51**

1              (Open court, 12:00 p.m.)

2              THE CLERK:  Today is Friday, June 1, 2018.  The time

3    is 12 p.m.  The case is United States of America versus Patrick

4    D. Angelo, case No. 18-CR-51.  We're here today for a

5    sentencing.  May we have appearances for the record, please.

6              MR. GESTRING:  Good afternoon, Your Honor.  Craig

7    Gestring, Assistant United States Attorney, with Sean Eldridge,

8    Assistant United States Attorney for the Western District of New

9    York appearing for the United States, Your Honor.  Good

10   afternoon, Judge.

11             THE COURT:  Good afternoon.

12             MS. BIANCO:  Good afternoon, Your Honor.  Randi Bianco

13   on behalf of Patrick Angelo, who is seated at my right.  Also

14   present are his parents and his grandmother.

15             THE COURT:  Good afternoon to all of you.

16             Do both the government and the defense have the final

17   Presentence Report dated April 30, 2018, and the addendum dated

18   May 22, 2018?

19             MS. BIANCO:  Yes, Your Honor.

20             MR. GESTRING:  Judge, we do.  We received both and

21   reviewed both.

22             THE COURT:  Thank you.  Have you shared those reports

23   with your client, Ms. Bianco?

24             MS. BIANCO:  Yes, I have.

25             THE COURT:  Thank you.  The record should reflect that

**USA v. Angelo - 18-CR-51**

1    I have carefully reviewed those reports.  I have reviewed all

2    the submissions by counsel.  In addition, I have reviewed

3    letters from the following:  The Reverend James Adams, Dennis

4    Angelo, David and Dorothy Angelo, Teresa Angelo, Lottie Angelo,

5    LaVeda Bailey, Rick and Pam Banas, Ryan Betts, Molly Carlini,

6    Laura Cheek, Pat Collins, a letter from Dr. Zachary Cordero,

7    David Kiley, Steve Palumbo, Craig and Monica Schwegman, Paul

8    Salce, Wendra and James Trowbridge, and a letter from Tasha

9    Williams, and Jesse Kenas Collins.

10           I have also gone back and reviewed the psychological

11   report from Dr. Lazzaro which I have been supplied previously in

12   this case when there was a request made about continuing

13   detention.

14           Does the government have any objections to the facts,

15   the offense level calculation, or the criminal history as set

16   forth in the PSI?

17           MR. GESTRING:  Judge, we do not.

18           THE COURT:  Thank you.  Does the defense have any

19   objections to the facts, the offense level, or the criminal

20   history as set forth in the Presentence Report?

21           MS. BIANCO:  No, Your Honor.

22           THE COURT:  Thank you.  Does the government wish to

23   say anything before I impose sentence?

24           MR. GESTRING:  Yes, Judge, thank you.  Judge, I think

25   in our sentencing submission and in the previous arguments made

**USA v. Angelo - 18-CR-51**

1    with respect to detention and the argument again that we filed

2    in our detention response, we set forth the facts that back in

3    October 2017, specifically October 19, the defendant made a

4    direct threat to kill Congressman John Katko and his family.

5    The death threat specifically linked the performance of the

6    Congressman's duty to the death threat.

7            Judge, I think we've previously provided the Court

8    with a copy of the recording and we've provided counsel and we

9    used it at a detention hearing, but I think it's important,

10   Judge, to consider the actual audio of the threat, not just the

11   text of it.  And that is that the words themselves are

12   significant, but it's the delivery of that that is the chilling

13   part to this, Judge, and I will play it at this point.

14                      (Audio played.)

15           MR. GESTRING:  Judge, as the Court is aware, the call

16   was placed on one day and wasn't received on that day by the

17   Congressman's staff.  There was a short delay prior to them

18   processing their voicemail.

19           However, Judge, significantly, the minute they

20   received that, it was immediately perceived to be a direct

21   threat to kill the Congressman and was immediately reported to

22   law enforcement initially in the persona of the United States

23   Capitol Police, who began the threat investigation.  They

24   reported it to the FBI both in Washington, and then in the

25   course of the investigation, Your Honor, it was identified that

**USA v. Angelo - 18-CR-51**

1   the call had come from a cellular telephone that was registered

2   out of the Western District of New York.  The FBI in the Western

3   District got involved.  They were able to identify this

4   defendant as the person who placed that call.  He was then

5   identified to be residing in the Northern District, which is

6   what brought the case back here, Judge.

7        But in addition to the Capitol Police and the FBI

8   being involved, based on the nature of the threat and based on

9   the Congressman's travel and his professional obligations and

10  responsibilities with Congress here in the district, additional

11  law enforcement agencies were also involved including the New

12  York State Police, the Camillus Police, Syracuse Police

13  Department, and the Onondaga County Sheriff's Department, all of

14  whom were called in to provide additional security when the

15  Congressman was here in the district.

16        When Mr. Angelo was interviewed by the FBI, Your

17  Honor, he met them in a Syracuse McDonald's.  Initially when

18  they spoke to him, they called him on that same phone which had

19  made the threat.  He wouldn't give them an address where he was,

20  but he ultimately agreed to meet them at a local McDonald's in

21  Syracuse.

22        He had told the agents that he doesn't like the

23  police, but especially the FBI, and he doesn't trust him, his

24  quote, "as far as he can throw them."  He initially, Judge,

25  denied placing the call to the Congressman and went further than

**USA v. Angelo - 18-CR-51**

1   that saying he definitely did not make the call and he does not

2   involve himself in politics.  Those were lies, Judge.

3          He then further -- the agents engaged him in a

4   discussion about net neutrality, and only in the context of that

5   did he then eventually say, "Yes.  I in fact did call somebody."

6   He initially lied to them again by saying, "I don't know whose

7   office I called," which strains credibility when you consider

8   the person he ended up calling was his Congressman.  So it

9   wasn't just a random number that he dialed.  He specifically

10  reached out to his legislative representative in order to make

11  this threat.

12         He then said that he used strong language that could

13  be construed as a threat, and he ultimately concluded, "I'm sure

14  they didn't appreciate it."  That's certainly an understatement,

15  Judge.

16         Judge, in the defendant's statement, there's a section

17  that's titled "alcohol played a significant role in the

18  offense."  Essentially, the entire section tries to use phrases

19  like the defendant made a spur-of-the-moment decision and that

20  he still only has a vague recollection of the call, essentially

21  trying to mount some kind of involuntary intoxication defense.

22  But the defendant's actions, Judge, clearly his actions, his

23  statements, and his word choice don't support this argument.

24         First off, the call wasn't made in the middle of the

25  night.  It was made at 7:50 on a Thursday night.  He made a

USA v. Angelo - 18-CR-51

1    cold, calculated threat to hunt down and murder the Congressman

2    and his family in the course of that phone call.

3            The Court heard that call.  The Court is familiar with

4    the text of that call.  It is articulate, it is eloquent, and it

5    is chilling.  He's not talking -- it's not a slurred, drunk

6    call.  He's not talking about spaceships or pineapples.  He is

7    specifically achieving the goal which he intended, which is to

8    deliver a direct threat to a United States Congressman coupled

9    with a discussion about net neutrality.

10           In the context of that threat, Judge, there's five

11   sentences that are an articulate, well thought out argument

12   about net neutrality.  That's in stark contrast to the defense

13   of, "I was so drunk.  I didn't know what I was doing."  He used

14   words like progeny, literally wipe you off from the face of the

15   earth.  Again this is not the words of a 2 a.m. drunk call.

16           Judge, I would like to address the letters that were

17   referred to by the Court.  There were a total of 19 letters of

18   support, and that includes the one provided yesterday, that was

19   filed yesterday, Judge.  In fact, when I went through, I

20   actually made a chart of all of the letters, and specifically,

21   Your Honor, I was looking for several things.  I was looking for

22   any mention of the current charges.  I was looking for any

23   mention of alcohol and any use of alcohol.  I was looking for

24   any references to how out of character this behavior, these

25   criminal charges here in federal court were with what the letter

USA v. Angelo - 18-CR-51

1    writers knew about this defendant.

2              Of the 19 letters, Your Honor, only one letter

3    mentioned the reasons that we're here today, that is the threat

4    call.  There was only one letter that talked about the actual

5    charges, and that was from his former landlord, and at best,

6    that was a tangential mention when the landlord, and this is

7    document 31, page 23, says, "I don't know what else I can tell

8    you except to say that he did something very stupid and it was a

9    bad judgment call.  However, I can personally say he is not

10   malicious in any way, and I know he regrets ever making the

11   call."

12             That's as close as anyone in those 19 letters gets to

13   acknowledging why we're here, why we're here in federal court,

14   and what this Court should take away under the 3553(a)

15   sentencing factors with respect to this defendant.  Nobody even

16   comes close to talking about the facts, Judge, and nobody, not

17   one single letter talks or mentions the word alcohol or talks

18   about alcohol use.  That is significant, Your Honor.

19             The letter that was filed yesterday, May 31, from a

20   person who indicates -- from Jesse Collins, who is a close

21   friend and says they stay connected to this day.  Not one of

22   those mentions any use of alcohol, any episodes with alcohol,

23   any problems with alcohol, nothing.  He would not have done this

24   but for the fact that he was drunk, nothing.  It's completely

25   silent, Judge, and that's significant because to the extent the

USA v. Angelo - 18-CR-51

1    Court considers those letters under the 3553(a) factors, I think

2    the basis of knowledge and the relevance to the sentencing is

3    important, Your Honor.

4            The defendant would have you believe that he drinks so

5    much and so regularly that at 7:50 on a Thursday in October, he

6    was so drunk, he didn't realize that he dialed his Congressman

7    and threatened to murder him and his family.  However, that is

8    completely inconsistent with everything else.  Nobody ever

9    mentions alcohol.  Nobody mentions any other instances that are

10   similar to this.

11           Effectively, Judge, these letters don't provide any

12   guidance to this Court as to who this man is today.  They don't

13   provide any guidance to this Court as to who this man was in

14   October 2017 when he threatened to hunt down and murder the

15   Congressman and his family.  They're a redacted picture of who

16   we have.  They're very eloquent, and I'll be honest with you,

17   Judge.  They're very heartfelt.  You can tell that the people

18   who wrote these letters clearly love and support this defendant.

19   That's not an issue.  They may well have been told not to say

20   certain things, but they provided nothing for this Court about

21   who this defendant is today, and that's what important.

22           Everybody talks about his work at the Cheesecake

23   Factory, at Apnea Care.  Obviously he's a gifted and talented

24   singer, did some traveling, but it stops.  It stops short at the

25   important time of October of 2017, and they don't provide any

USA v. Angelo - 18-CR-51

1    window into who this defendant is then, or more importantly,

2    Judge, and more significantly, who he is today.  Not one letter

3    says, "I did not -- totally this is out of character with him.

4    We did not see this coming.  It was only the evils of alcohol

5    that made him do this."  Not one letter out of 19, Judge.

6         The Court's gotten character letters before.  The

7    Court gets these letters all the time.  In preparing for this, I

8    was thinking what would I put in a letter if somebody asked me.

9    We all get requests for reference letters or for recommendation

10   letters, and the first question is, "Why do you need this

11   letter?  What is the purpose of this?  Who is this going to?"

12   So that we can structure that response in such a way to be

13   effective in that letter, and none of these letters address why

14   we're here today, Judge.

15        We heard a lot about the choir.  We heard a lot about

16   his singing.  He's clearly a great grandson, but that is not

17   relevant to this proceeding because we don't know who he is for

18   purposes of sentencing when it comes down to that.  Judge,

19   that's important.  That's significant.

20        Ultimately, Your Honor, we ask that you review the

21   3553(a) sentencing factors and in considering the nature and

22   circumstances of the offense, the history of the defendant,

23   including the seriousness of what he did, and the need for the

24   sentence imposed, Judge, specifically to reflect the seriousness

25   of this offense.

USA v. Angelo - 18-CR-51

1        Not to oversell it, but this type of crime undercuts

2   and undermines the very fabric of democracy.  By threatening to

3   kill a United States Congressman directly related to an issue

4   before the government, that challenges everything, Judge.  And

5   it wasn't just a threat to kill the Congressman, but he brought

6   the family in.  I will hunt you down and murder you.  I will

7   hunt you down and murder your family.  Judge, that is the most

8   serious crime you can think of.

9        And there's certainly a need to promote the respect

10  for the law here as well as to promote both a general deterrence

11  and a specific deterrence.  He should be specifically deterred,

12  and I think the Court can fashion a sentence that will do so.

13  But there also needs to be a message of general deterrence, Your

14  Honor, which is to say that we don't tolerate this in society,

15  that we are a free society, and the First Amendment guarantees

16  you the right to say just about anything.  What you cannot do is

17  you cannot call a United States Congressman, threaten to hunt

18  him down, threaten to murder him, and threaten to murder his

19  family for doing his job.

20       Judge, we would ask, as we set forth in our papers,

21  for a sentence which is at least at the high end of the

22  guidelines, which are four to ten months; a maximum period of

23  supervised release, during which extensive supervision should be

24  offered to include mental health treatment; and specifically,

25  Judge, a condition with no contact whatsoever with the

USA v. Angelo - 18-CR-51

1    Congressman, with his family, or with his office.  To the extent

2    that the defendant remains within the Northern District and he

3    still has congressional responsibilities for this defendant, the

4    government is requesting that any prior contact with the

5    Congressman be done through probation so that they can vet it,

6    insure there's no future contacts.

7            To the extent the defendant relocates, and it's our

8    understanding there may be relocation discussion about maybe

9    moving back in with the parents within the Western District.  At

10   that point, Judge, there would be a termination of

11   responsibilities between the defendant and the Congressman.  The

12   Congressman would no longer be his representative.  So we would

13   again say no contact whatsoever with the Congressman, his

14   family, or his office.

15           Judge, obviously a condition which would prohibit any

16   type of acts or threats of violence.  Judge, we think this is an

17   appropriate sentence and this is the necessary sentence in this

18   case.  Thank you.

19           THE COURT:  All right.  Thank you.

20           MS. BIANCO:  Your Honor, Patrick is 28 years old, and

21   he comes from a very supportive family.  His parents have made

22   every court appearance.  Today they're here.  They're here with

23   his grandmother.  Patrick has no criminal record.

24           Now, probation has calculated the advisory guideline

25   range for four to ten months imprisonment, and as of today,

**USA v. Angelo - 18-CR-51**

1    Patrick has served almost seven months of incarceration.  And

2    this is someone who has never been to jail before, and this was

3    quite an eye-opener for him.

4           We're asking for a sentence of time served plus

5    probation because we believe that sentence is sufficient but not

6    greater than necessary to achieve the statutory purposes of

7    sentencing.

8           I'd like to talk a little bit about the nature and

9    circumstances of the offense, as did the government.  Now,

10   Patrick called the Congressman's office at night after he had

11   been drinking.  The office was closed.  You can tell by the

12   voice message itself -- we just heard it again -- that he's

13   speaking very slowly.  His words are somewhat slurred.  He left

14   a threatening message on the voicemail, and it cut off before he

15   was actually finished.  He was intoxicated.  He didn't call back

16   and try to complete the threat, but being intoxicated doesn't

17   negate the seriousness of the offense, but this Court should

18   consider Patrick's intent, and he didn't intend to carry out the

19   threats.  How do we know this?  Well, Patrick didn't call back

20   that night, and he didn't leave any more messages for the

21   Congressman, and he wasn't arrested until six weeks later.

22          Now, when Patrick met the investigators two weeks

23   after the initial call, he initially denied it, but ultimately

24   he admitted what he did.  He told the agents he was drunk and

25   that he had no intention of carrying out the threat.  He met

USA v. Angelo - 18-CR-51

1    with the agents again on November 28, and again he admitted what

2    he did.  He was arrested on that day without incident, and the

3    government talks about how there's no indication he has a

4    problem with alcohol at all, but on the night of his arrest when

5    he was booked into the justice center, he blew a .08, and that's

6    documented in the records.

7          We submit that Patrick is not a danger to the

8    community.  The Court has a forensic psychological evaluation in

9    its possession, and it's significant because probation asked for

10   Patrick to undergo this evaluation, and Patrick readily agreed.

11   Probation picked the doctor, not Patrick, and that forensic

12   psychological opined that Patrick is not a danger.

13         And what's also significant is Patrick has never done

14   anything like this before.  He comes from a good home.  He is a

15   college graduate.  The fact that he's articulate is not

16   something that could be looked away and think, well, he wasn't

17   drunk because he was articulate.  He's articulate because he's

18   educated and he's a college graduate.  He has always had a job.

19         Now, the government has made much saying that the

20   people who wrote the letters, they don't know who he really is.

21   Truth in fact, we advised the people who wrote the letters,

22   "Please don't talk about the nature of the crime.  That's for

23   the Court to determine.  Talk about Patrick as he is as a

24   person.  Talk about how you know him."

25         Now, we're all aware in the present time that threats

**USA v. Angelo - 18-CR-51**

1   have to be taken very seriously as many people actually carry

2   out these threats, but those same people who carry out the

3   threats, they give indicators to their friends and family of

4   something, that something is amiss, that something is wrong, and

5   people who know them well see something going on before those

6   threats are actually carried out, and here we have just the

7   opposite.

8            The Court has received numerous letters from friends,

9   family, neighbors, clergy members, former employers, all

10  attesting to Patrick's good character.  All of these people have

11  known Patrick for many, many years, and they see the good in

12  him.  They didn't mention anything about the alcohol or anything

13  else because we told them, "Please do not talk about the nature

14  of the offense."

15           A sentence of time served and probation is entirely

16  reasonable under the circumstances for a 28-year-old man with no

17  priors who may have an alcohol problem and he is incredibly

18  remorseful for what he did.  And having spent seven months in

19  jail, that was quite a lesson for him.  Thank you, Your Honor.

20           THE COURT:  All right.  Thank you.

21           Mr. Angelo, do you want to say anything before I

22  impose sentence?  You may, but you're not required to.

23           THE DEFENDANT:  Yes.

24           THE COURT:  Go ahead.

25           THE DEFENDANT:  I'd like to apologize to the Court and

USA v. Angelo - 18-CR-51

1    to the government for any problems and worries and fears I may

2    have caused.  I'm very sorry, and none of this would have

3    happened unless I was drinking.  I apologize.

4              THE COURT:  All right.  Thank you.

5              The record should reflect that I have carefully

6    reviewed all of the materials that have been submitted to me

7    regarding this case.  I find the conduct of Mr. Angelo in the

8    case beyond troubling.  There's something in our society about

9    instilling fear in another person that is really almost like

10   holding the person hostage, and in this case, not just holding

11   the Congressman hostage, but his family hostage as well.

12             There's nothing about this case that in any way makes

13   me look at you, Mr. Angelo, and feel that you didn't know what

14   you were doing.  I don't know if you were intoxicated that

15   night.  I'm not an intoxication specialist.  I'm not an alcohol

16   counselor.  I can't discern whether or not somebody is

17   intoxicated just by listening to the voice.

18             One could argue very strenuously that you were not

19   intoxicated.  As Mr. Gestring pointed out, your voice is solid.

20   It's purposeful.  It's definitely chilling.  You have quite the

21   vocabulary, and it's not often what a voice that someone might

22   consider almost a caricature of someone who is intoxicated.  But

23   I can't answer that question.  As a sentencing judge, I can't

24   sit up here and say yes, you were intoxicated, or no, you

25   weren't.

1           But I don't believe for a minute that you didn't know

2   what you were saying, and I don't believe that your threat to

3   Congressman Katko and his family was unintentional.  And I think

4   that if you're still thinking it was unintentional, you're in a

5   state of denial.  That threat was not unintentional.  You may

6   have had alcohol in you.  Whether you were legally intoxicated,

7   I don't know, but there's no way in my mind that that threat was

8   unintentional.

9           No public servant should have to put up with this kind

10  of nonsense.  No person should have to put up with this kind of

11  nonsense.  Who in this room would want to be looking over their

12  shoulder every day to wonder if somebody is coming to kill them?

13  You know, when I met you several months ago, I felt that you

14  might not understand what you did.  I'm still not sure that you

15  understand the harm that you did.  Public servants have a right

16  to do their job without constantly looking over their shoulder

17  worried that someone is going to extinguish their life, and

18  whenever you put the children of a public servant in play, it's

19  even far worse.

20          And the fact of the matter is that in some respects, I

21  agree with what Mr. Gestring said.  I have a psychological

22  report that quite honestly doesn't tell me very much about you.

23  I have letters from your family that tell me that you were a

24  nice child and a nice young adult and that you were able to hold

25  a job.  But I have to say there's much more about you that I

USA v. Angelo - 18-CR-51

1   don't know than I do know, and I do find that concerning, to say

2   the least.

3          On the other hand, you do have no criminal record.

4   You have a criminal history category of 1.  And your attorney is

5   correct that in the weeks that ensued your vicious phone call to

6   the Congressman, there's no evidence that you did anything to

7   act on that call.  There's no evidence that you did anything in

8   furtherance of the intentions that you expressed in the call.

9          So to sum up what I think about this case, I think

10  that what you did is beyond reprehensible.  It was an assault on

11  the Congressman's life.  It was an assault on the life of his

12  family, and in a larger sense, it was an assault on government.

13  And it's a bizarre assault over net neutrality, which makes the

14  phone call even more strange and disconcerting than it already

15  is in my mind.

16          But just to be clear, I don't think it was

17  unintentional.  I want the record to reflect that.  I think you

18  absolutely, positively knew what you were doing.  And if you're

19  going to sit there and try to use alcohol as an excuse, time to

20  look in the mirror.  You may occasionally drink too much and you

21  may have had alcohol to drink that night, but you knew exactly

22  what you were saying and doing.

23          When you were first asked if you had made this call,

24  as your attorney indicated and I know is the fact, you denied

25  it.  And it was only after you found out that the police were

**USA v. Angelo - 18-CR-51**

1   onto something that you finally admitted what you had done.  At

2   one point, you denied that you have a problem with alcohol, but

3   then when it becomes convenient for you to say that you made the

4   phone call only because you were intoxicated, that's what you

5   say.

6        So I think I have somebody in front of me for

7   sentencing who either has a problem with alcohol that he won't

8   acknowledge, or two, is a very manipulative, intelligent person

9   who is trying to say that he has a problem with alcohol in order

10  to convince me that you should get a lesser sentence.  Both of

11  those again are concerning to me.

12       As I said a moment ago, I have reviewed and considered

13  all pertinent information including but not limited to the

14  Presentence Investigation Report, the addendum, the plea

15  agreement, submissions by counsel, the 2016 edition of the

16  Sentencing Guidelines Manual, and the factors outlined in 18

17  United States Code Section 3553(a).

18       I adopt the factual information and the guideline

19  applications contained in the Presentence Investigation Report.

20  I find that the total offense level is 9.  The criminal history

21  category is 1, and the guideline imprisonment range is four to

22  ten months.  The guideline range is within zone B of the

23  sentencing table.  Please stand for your sentence, Mr. Angelo.

24       Upon your plea of guilty on count 1 of the

25  information, it is the judgment of the Court that you are hereby

**USA v. Angelo - 18-CR-51**

1    committed to the custody of the Bureau of Prisons for a period

2    of time served.  I note for the record that you have been in

3    custody since your arrest on November 28, 2017, and this

4    sentence is sufficient but not greater than necessary to meet

5    the goals of sentencing set forth in 18 United States Code

6    Section 3553(a).

7              Upon your release from imprisonment, you shall be

8    placed on supervised release for a term of three years.  You

9    need to listen carefully to this, and I know your attorney will

10   go over it with you when I am finished because when I place

11   conditions on someone, they are not light suggestions.  They are

12   orders.  And you, sir, are going to be supervised for three

13   years by probation.  And if you violate any one of these terms,

14   I personally would take about a nanosecond to issue a warrant

15   for your arrest.  So you need to understand that these are not

16   suggestions.

17             While on supervised release, you shall not commit

18   another federal, state, or local crime, and you shall comply

19   with the standard conditions that have been adopted by this

20   Court as well as the following special conditions which I find

21   are necessary and justified in this case based upon the nature

22   of the instant offense as well as the history and

23   characteristics of the defendant as outlined in detail in the

24   presentence report and to promote your rehabilitation.

25             First, you must participate in a program for substance

USA v. Angelo - 18-CR-51

1   abuse, which shall include testing for the use of controlled

2   substances, controlled substance analogues, and alcohol.  This

3   may include outpatient treatment as recommended by the treatment

4   provider based upon your risks and needs.

5           You may also be required to participate in inpatient

6   treatment upon recommendation of the treatment provider and upon

7   approval of the Court.  The probation office shall approve the

8   location, frequency, and duration of outpatient treatment.  You

9   shall abide by the rules of any treatment program which may

10  include abstaining from the use of any alcohol.  You shall

11  contribute to the cost of any evaluation and/or treatment in an

12  amount to be determined by the probation officer based on your

13  availability to pay and the availability of third-party

14  payments.

15          You must participate in the mental health program,

16  which may include medical, psychological, or psychiatric

17  evaluation and outpatient treatment as recommended by the

18  treatment provider based upon your risks and needs.  You may

19  also be required to participate in inpatient treatment upon

20  recommendation of the treatment provider and upon approval of

21  the Court.  The probation office shall approve the location,

22  frequency, and duration of outpatient treatment.

23          You must abide by the rules of the program, which may

24  include taking medicine.  You shall contribute to the cost of

25  any evaluation and/or treatment in an amount to be determined by

USA v. Angelo - 18-CR-51

1   the probation officer based on your ability to pay and the

2   availability of third-party payments.

3          Based upon your substance abuse history and for the

4   purpose of effective substance abuse treatment programming, you

5   shall refrain from the use of alcohol and be subject to alcohol

6   testing and treatment while under supervision.

7          While you are living within Congressman Katko's

8   district, you must not communicate or otherwise interact with

9   him or any member of his immediate family without first

10  contacting the probation office.  When you're no longer -- if

11  you are no longer in that district, you must refrain from

12  contacting Congressman Katko or any member of his immediate

13  family or any member of his staff either directly or through

14  someone else.

15         I find that based on your financial resources,

16  projected earnings, and other income as well as your financial

17  obligations, that you do have the ability to pay a fine.  You

18  must pay a fine in the amount of $2,000 payable within 90 days

19  of sentencing.  You must also pay to the Clerk of the Court a

20  special assessment of $100, which is due and payable

21  immediately.

22         Both parties have the right to appeal this sentence in

23  certain limited circumstances except as restricted by any waiver

24  stipulated in the plea agreement.  You are advised to consult

25  with your attorney to determine whether or not an appeal is

**USA v. Angelo - 18-CR-51**

1    warranted.  Any appeal must be filed within 14 days of the date

2    that judgment is filed in this case.  I note for the record that

3    the defendant waived the right to appeal any sentence of ten

4    months or less.  You may be seated.

5              Is there anything further from the government?

6              MR. GESTRING:  Your Honor, the United States would

7    move to dismiss the underlying criminal complaint.

8              THE COURT:  The underlying criminal complaint is

9    dismissed.

10             MR. GESTRING:  Thank you, Judge.

11             THE COURT:  Anything further from the defense?

12             MS. BIANCO:  No, Your Honor, thank you.

13             THE COURT:  Let me just say a few parting words to

14   you, Mr. Angelo.  One can only hope that seven months in the

15   county jail is sufficient deterrence for you for any further

16   ridiculous, unacceptable conduct like this.  I know family

17   members are here.  I'm not blaming the family members.  You are

18   an adult, and your family is very supportive obviously.

19             But I hope your friends and your family know how

20   serious what you did is, and I hope you and your support network

21   know that in my view, there should be zero tolerance for you

22   violating any of the terms of the supervised release.  You are a

23   young man.  You have your entire lifetime in front of you.

24   Unfortunately now you're a convicted felon, but people make

25   mistakes.  Can you fix this and live a law-abiding life and do

**USA v. Angelo - 18-CR-51**

1    good?  Yes, you can, but it's going to be up to you now.

2              As an operation of law, I want you to know that you

3    can't have any firearms anymore because you're a convicted

4    felon.  That's not a condition that I'm putting on you.  That's

5    just the operation of law because I know that you did have a

6    long gun at one time in your house.

7              Any family members or friends who ever become aware of

8    you having a firearm, they need to report that.  The threat that

9    you made to kill a United States Congressman is so concerning

10   that you absolutely, positively cannot be in possession of a

11   firearm any time in the future, even though you didn't act upon

12   this threat in the months that went by.

13             Is there anything further for the defense?

14             MS. BIANCO:  No, Your Honor.

15             THE COURT:  Court stands adjourned.

16                    (The matter adjourned at 12:39 p.m.)

17

18

19

20

21

22

23

24

25

25

**USA v. Angelo - 18-CR-51**

1                        CERTIFICATION OF OFFICIAL REPORTER

2

3

4          I, JACQUELINE STROFFOLINO, RPR, Official Court Reporter,

5     in and for the United States District Court for the Northern

6     District of New York, do hereby certify that pursuant to Section

7     753, Title 28, United States Code, that the foregoing is a true

8     and correct transcript of the stenographically reported

9     proceedings held in the above-entitled matter and that the

10    transcript page format is in conformance with the regulations of

11    the Judicial Conference of the United States.

12

13              Dated this 25th day of June, 2018.

14

15          **/s/ JACQUELINE STROFFOLINO**

16              JACQUELINE STROFFOLINO, RPR

17              FEDERAL OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25